CHARLES BLOOD & another *vs.* NASHUA AND LOWELL RAIL-
ROAD CORPORATION.

A railroad corporation, building a bridge across a stream, are liable for the damage thereby occasioned to the owner of a saw-mill above, by the obstruction of the stream so as to prevent the water from passing off from his mill as freely as it had previously; but are not liable for the damage suffered by him by being impeded and put to increased expense in getting logs up the stream to his mill, whether the stream be navigable for boats and rafts, or not.

ACTION OF TORT, brought by the owners of a saw-mill, situated in the northerly part of Chelmsford on a stream called Stony Brook, being the lowest mill privilege on that stream, and about five hundred feet from its outlet into the Merrimack River, to recover damages occasioned by the erection of a stone bridge across Stony Brook by the defendants for the accommodation of their railroad, lying along and near the bank of the Merrimack River.

The case was referred, by rule of court, to three referees, to report the facts in the case to the court for their determination, and also to ascertain and report the damages to be awarded, if any, to the plaintiffs, provided the court should be of opinion, upon such statement of facts, that the plaintiffs were entitled to recover. At the hearing before the referees, the parties further agreed " that the report of said referees shall include all damages for the erection, maintenance and future repairs of said bridge as the same now is; provided no further obstruction of the stream is made, other than such as may be caused by the present bridge;" "and the judgment of the court upon the award of the referees shall be final as to the right to maintain said bridge as the same now is."

The referees reported that for forty years or more the occupants of the saw-mill had been accustomed to take a great proportion of their logs for sawing from the Merrimack River, through the mouth of Stony Brook and up the same, into a kind of pond or reservoir below their dam, and immediately

12*

above the place where the railroad crosses the brook; and that the defendants' bridge was first built in 1838, on piles; and the present bridge in 1849, on stone arches.

And the referees awarded, subject to the opinion of the court as to the plaintiffs' right to recover, and as to the effect of certain outstanding mortgages of the plaintiffs' estate on the sums awarded, that the plaintiffs recover of the defendants, 1st, for the damages caused by leaving some piles of the old bridge in the stream, after the removal of that bridge and the erection of the new one, and thus obstructing the passing of logs, fifty dollars; 2d, for the damages caused by obstructing the stream, whereby the water was prevented, at certain stages thereof, from passing off from the plaintiffs' mill as freely as it had under the pile bridge, two hundred dollars; 3d, for the damage caused by it being rendered more laborious and expensive to get logs, for the use of the plaintiffs' mill, from Merrimack River, up Stony Brook, under the stone bridge, than it had been under the pile bridge, six hundred and fifty dollars; making in the aggregate nine hundred dollars; "said sum or sums or either of them to be in full for all past damages caused by the erection and maintenance of said stone bridge or any other obstruction placed by said defendants in said Stony Brook between the plaintiffs' mill and the mouth thereof, and also in full for the right on the part of the defendants to repair, keep up and maintain perpetually said bridge, as the same now is; or to keep up, construct, repair and maintain perpetually any bridge in the place where said stone bridge now is; provided such bridge, so constructed, repaired, maintained or continued, shall cause no more obstruction to the stream or to the passage of logs than the present bridge."

The defendants waived all objection to the form of action; and admitted their liability, if the plaintiffs could recover in any form of proceeding, for the causes above set forth.

*J. G. Abbott,* for the plaintiffs, cited *Moorhead* v. *Little Miami Railroad,* 17 Ohio, 340; *Bradshaw* v. *Rodgers,* 20 Johns. 103; *Springfield* v. *Connecticut River Railroad,* 4 Cush. 63; *Brown* v. *Chadbourne,* 31 Maine, 9; *Rowe* v. *Granite Bridge,* 21 Pick. 344;

*Knight* v. *Wilder*, 2 Cush. 199; *Mason* v. *Kennebec & Port land Railroad*, 31 Maine, 217; *Rogers* v. *Kennebec & Portlana Railroad*, 35 Maine, 319; *Perley* v. *Chandler*, 6 Mass. 457 *Peavey* v. *Calais Railroad*, 30 Maine, 498.

*B. F. Butler*, for the defendants, cited *Bullen* v. *Runnels* 2 N. H. 255; *Palmer* v. *Mulligan*, 3 Caines, 307; *Smith* v *Boston*, 7 Cush. 255; *Brainard* v. *Connecticut River Railroad* 7 Cush. 510.

SHAW, C. J.   The question is, whether the awards of damages are founded on correct legal principles, and whether the report can be accepted.   In considering it, we must take notice that there are two classes of rights which may be had in rivers, streams and watercourses in this commonwealth.

Every person owning land, through or along which a water-course passes, has a right, as inseparably incident to his estate, to the beneficial use of the stream in its passage, in its natural channel, for all purposes for which it can be usefully applied, to supply his cattle, to irrigate his land, and the like; and if the fall be sufficient, he may use it as a mill power.   It follows of course that no riparian proprietor higher up has a right to divert or corrupt it, or render it unfit for use; and no riparian proprie-tor below has a right to obstruct its free passage off, or to set it back upon the mill or land of such owner.

But there is another right, in rivers and watercourses, for navigation, boating and rafting.   The rule of the common law is, that waters are not navigable, unless within reach of the ebb and flow of the tide.   But it has often been held here, that the public have a right to the use of the large rivers, and indeed of all rivers and watercourses, suitable for boats and rafts, and in that sense they are deemed navigable, though above the ebb and flow of the tide.   In these, there is a right of way for boats and rafts.   *Commonwealth* v. *Charlestown*, 1 Pick. 180.   *Com-monwealth* v. *Chapin*, 5 Pick. 199.

The referees have compared the present condition of the stream with that in which it was, when the pile bridge first erected by the defendants was standing; but we think the rule should be to compare it with the natural flow of the stream.

But as it is impossible to suppose that the flow was more free through the pile bridge than in its natural course, and as there is no intimation that the pile bridge was practically an obstruction, we are to assume that it had no effect in this respect, and that the passage of water was equally free with, as without it. The comparison therefore taken between the present bridge and the pile bridge is the same as that between the present bridge and the natural course of the stream.

Then, applying the principles above stated, the court are of opinion that the plaintiffs have a right to recover the second item of damage found by the referees. The defendants, by their charter, had a right to make a bridge across this stream, but they were bound to do it in such a manner as not to obstruct the stream. But it appears that by their stone bridge they have diminished the width of the natural channel, penned up the water, and set it back on the plaintiffs' mills, and this causes damage to them in their estate; for this they may recover.

But we are of opinion that they have not a right to recover the damages awarded in the first and third items, both which are founded in the fact that the plaintiffs have been impeded, and will be put to increased expense, in getting logs to their mills from the Merrimack River.

Perhaps the case does not disclose facts enough to enable us to judge, whether that section of Stony Brook, lying between the plaintiffs' mills and Merrimack River, is or is not navigable for rafts and boats. But we have not thought that question material; for, if it is not navigable in this sense, then the plaintiffs had no right to use it for boats and rafts, the loss they sustain in getting logs through it is *dammum absque injuria.* But supposing it to be navigable for boats and rafts, (the supposition most favorable to the plaintiffs,) they cannot maintain this action, because such obstruction would be a public, not a private nuisance; it would be a violation of the public right, not of the plaintiffs' private right. The obstruction of a public right of way is a public, not a private wrong; it may affect those near the obstruction much more than the rest of the public; but the damage sustained by those near it differs in

degree only, not in kind.   It is a wrong therefore, if it be one, to be redressed by a public prosecution, not by recovering damages in a private action.

A question was made whether, as the estate of the plaintiffs is under mortgage, this action can be maintained without the concurrence or consent of the mortgagees, and whether the mortgagees, should they foreclose, would not have a claim against the defendants for the same damages.   But being informed that the plaintiffs would procure and file a release, we have not considered that question, it being understood that such a release will be filed before judgment is entered.

We would also suggest whether, as the effect of the agreement of parties before the referees, and the assessment of damages to the plaintiffs for a perpetual right, as against the plaintiffs and their successors, the future owners of the mill estate, to maintain the bridge in its present state, is to create an easement or subject their estate to a servitude, which is an interest in real estate, there ought not to be a deed of grant or release executed by the plaintiffs to the defendants.   The case of a perpetual right to flow, when gross damages are assessed, is no authority ; because there the perpetual right passes, and is secured, by force of the statute.

*Judgment for the plaintiffs for* $200.